All right. Good morning and welcome. You have 15 minutes. How much time would you like to reserve for rebuttal? I'd like to reserve four minutes for rebuttal, please. All right. Go ahead, please. Good morning and may it please the court. I'm Matt Gilliam and I represent the appellant, Ollie Bahreman. When this court held in Clemens that all agency fee requirements must conform to Section 152 11th of the Railway Labor Act, the RLA, to be valid and enforceable, this court explained that Congress enacted the 11th previso to prevent employers and unions from abusing their power under Section 52 11th, the power which they wielded over workers like Ollie Bahreman. The Supreme Court said in street, it also recognized that 11th was narrowly tailored to safeguard workers' rights. This case is about the intolerable effects on workers when employers and unions ignore this court's warning in Clemens and abuse their power. Let me ask specifically about Clemens, though, because as I read that it's talking about restricting or regulating the conditions of termination, correct? Your agency fee requirement must conform to Section 152 11thA. And there are probably several elements within Section 152 11thA an agreement has to meet to be protected and termination is certainly one of those. But where I kind of fall short then, I don't think Clemens is exactly on point. I think it's a flavor and it talks about termination. But my question is, it seems to me you're arguing that Section 211 says that the only penalty for nonpayment is termination. And as I read that, that's like inserting a new criteria that's not in there. How do you square that? Right. Well, there are a couple of important responses to that. The first one is that Section 152 11thA is an exception to the RLA's general prohibition of agency fee requirements in Section 152 4th. And as a statutory exception, and if Section 152 11thD marks it as an exception to 4th, Section 152 11thA, as an exception, needs to be read as limited to the expressed terms of the exception. But what's your best authority for that? If Congress enacts a statute that says we find this type of contract lawful, that there's an implicit prohibition on anything else that is similar but includes a lesser penalty, what's the best authority for that? This Court's decision in Syed, which we've The inclusion of one thing in a statutory exception excludes the other. And Section 152 11thA itself says that the agreements that employers and unions shall be permitted to make are those that require agency fee payments as a condition of continued employment. That is what creates the termination. But does that make sense that if Congress said can fire somebody, that that would not allow them to do something lesser? Well, no, Your Honor. This is something... Is there a reason that you would allow a union or employer to fire somebody, but not allow them to do a lesser penalty if they don't pay their agency fees? Well, the reason beyond the statutory intent and Congress's purpose, the Supreme Court explained this in Street. And it said the obvious purpose of this careful prescription was to strike a balance between union security interests and, quote, the claims of the individual to be free of arbitrary or unreasonable restrictions resulting from compulsory unionism. And the point of this language is that it shouldn't be easy for the union just to be able to, the employer and the union, to take away employee benefits. Because then you start to violate the duty of fair representation and the RLA's exclusive representation scheme starts to unravel. The Supreme Court's recognized in a case like... But Street just said the union can't use this money for political causes. And you're not asserting that the CBA here allows that, right? The CBA specifically has a lower agency fee because it doesn't require nonunion members to pay for the union's political activities, right? Well, Judge Koh, the Ellis and Street definitely said that. But what they also said is Ellis held that unions can't require nonmembers to make any fee contributions without a Section 15211A union security agreement. And Street said the same. But then we've said that, in several other cases, have said that agency fee agreements are fine. This isn't about compulsory membership in a union. This is about agency fees. And while that's not directly covered by 11th, you have a lot of authority against you on whether it permits such agreements. So Section 15211D says, and I'd like to quote it, any provisions in paragraphs 4th and 5th of this section in conflict herewith are to the extent of such conflict amended. And what that means is that unless and until the union and employer enter into a Section 15211 union security agreement as a condition of employment, it can't charge any agency fees. And the reason why we know Section 1524 prohibits agency fee requirements, this court recognized in Clemens that it does. It said that before the 11th Amendment, 2 4th, the RLA prohibited both union shop requirements for employees to join the union and agency shop requirements for nonmembers to pay a union service charge. Okay, what in 4th does that work? Which words would you point us to in 4th that is requiring that exception for agency fee agreements enforceable short of termination? The prohibition against influencing and coercing employees in an effort to induce them to join or remain members. But these are agency fees. Your client is not being forced to become a member. But all of these cases, Ellison Street included, recognize that membership is a legal concept that has been whittled down to its financial core. And what that means is a prohibition against any requirement that they pay agency fees without a Section 152 11th day agreement. But doesn't that then prove too much with respect to 11th? You've referred to union security agreements, but you can see that union security agreements, whatever is covered by 11th, unions and carriers are allowed to enter into agency fee agreements that do not require membership as a condition. No, no. Under Ellis, the Supreme Court has said that unions and employers can't require objecting nonmembers to pay any fees to a union without a Section 152 11th day union security agreement. But I guess the members, you seem to be reading members broadly in 4th and then quite narrowly in 11th. 11th does speak directly to membership and you're saying, well, that would preclude an agency fee agreement such as we have here. But why shouldn't we read members as broadly in 11th as we are in 4th? So, again, I would point the court to Section 152 11th D, which says that really 152 11th is an amendment to 4th. But you would agree that the Supreme Court in NLRB versus General Motors specifically approved these agency fees because it says it prevents employers and unions from forcing people to join a union, but also addresses the free rider problem. So the Supreme Court has already approved these types of agreements. You would agree with that, wouldn't you? Your Honor, agency fee agreements are permissible, but they have to meet the requirements of Section 152 11th A. And that's what these cases all show. They can't charge any agency fees without a Section 152 11th A agreement. And your interpretation of that, going back to Judge Koh's question, is that they are only valid if they have termination agreements as the sole sanction for noncompliance? That's correct, Your Honor. And how does that make sense? Where does that come from? So when Congress enacted the amendment, it said that it was only allowing this membership requirement that gives rise to agency fees under certain conditions. And Street said that 11th did not give a blanket approval to union shop agreements and was placing a precise and carefully drawn limitation on what might be made. In addition to authorizing employers and unions to enter into these agreements, 11th is also a safeguard for workers' rights. What it does is it allows them to, or it protects them by preventing employers and unions from doing exactly the intolerable thing that Allegiant and TWU did in this case, which was taking away seniority, which this Court in Addington recognized is immensely valuable to employees. So it's no small thing that... You know, if the CBA created the seniority rights, you would agree that it did, right? It created these seniority rights that are applicable in this particular employment situation. That's correct. Then why wouldn't they require that anyone who gets the benefit of that seniority right and privilege make some contribution for the cost of negotiating and entering into that CBA? Why should your client be able to be a free rider is really the ultimate question. Congress authorized employers and unions to enter into those agreements, but they did so under very narrowly drawn, limited circumstances. So what the employer and union can't do here is not enter into the prescribed Section 152 11thA agreement and start levying fees and taking away seniority-based benefits if the employee doesn't pay those fees, because it doesn't satisfy the as a condition of continued employment. So just to understand this, I believe you're treating 11th as prohibitive or prescriptive, but the only thing 11th says, along with the fact that it's an exception of 4th, is that it's permissive. And then you turn to, well, it's an exception from 4th, which generally prohibits coercion, but then it's coercion of membership. And again, we have cases that say that in both these cases, we're to read that as including agency fees. So it can't be 11th that's prohibiting anything here. Where should we look here for the prohibition that you're seeking to enforce? Section 152 4th. And really, 152 4th and 11th are interrelated. 11thD is the provision in the text that shows that. And as you said, and as Hanson said, the Supreme Court, that these agreements are permissive. And unless and until the employer and the union enters into a Section 152 11th agreement, 4th continues, 4th's prohibition on any fees continues in full force and effect. And the other thing we should look to is radio officers, which says that any, and radio officers, I realize, is a Section 883K clause that says that any union dues or agency fees increases the quantum of desire to be a member. So we should look to that in the case of the National Labor Relations Act. But we also know under Beck that 11th was modeled after it, and Justice Brennan and Beck said that they are statutory equivalents. But my point on radio officers is that the Court said that requiring employees to pay any union dues or agency fees increases the quantum of desire to be a member. So letting these agency fee requirements is unlawful inducement and coercion to make these people join a union. Radio officers says that, and we've quoted. I see that I'm into my time here. All right. You have a minute, 44 seconds left. Please, the Court. Andrew McClintock, Ford Harrison for Allegiant Air. For the purposes of timing, I have 10 minutes to address counts one and two, and co-counsel from TW is going to be addressing count three, which is the DFR claim. So I'd like to start with some of the issues that opposing counsel raised. And those direct or relate most directly to what I think is just an overreach for the interpretation of the various cases. And let's start with this. Everybody agrees that Section 29 of the Collective Party Agreement is not a union security clause. The plaintiffs look at Clemens, which is about a union security clause, and says, this controls. You cannot have a case about a union security clause dictating outcome of an agreement that is not a union security clause. This agreement is about seniority and about incentivizing. So what's the best authority for the opposite? If Congress enacts a statute that explicitly says this particular type of contract is lawful, then what is your best authority to say, well, then there's a lot of implied approval of similar contracts that have different penalties. What's your best authority for that proposition? So I think I would look at the entire structure of the Railway Labor Act, which leads to companies and unions' broad discretion to resolve the disputes between them in the manner that they see fit. Mr. McClintock, I guess I'd like to draw your attention and follow up on Judge Koh's question. Looking at the Fourth, why isn't this an agreement if it's not covered as a union security agreement under Eleventh? Why isn't it an agreement to deduct from the wages of employees fees payable to labor organizations that's explicitly prohibited by Fourth? Because what plaintiff describes as the proper interpretation of Section 2 Fourth has no support at all. Their position is that there is this term of art where membership in Section 2 Fourth means not only membership, but an obligation to pay an agency fee. And what the legislative history and the timing of the various pieces of the statute will tell you is there's no foundation for that. Section 2 Fourth came into the Railway Labor Act in 1934, and you can look at Section 2 Fourth, Street, and I believe TWA v. IFA, and they both describe this. And there was in the early days of the statute a problem with company unions where the employer was coercing, leveraging employees to not join the independent national union, but to be a member of the company union. That is the history underlying 2 Fourth. But then you look at Section 2 Eleventh. 2 Eleventh didn't come in until 1951. And the cases like Street, so Street was 19- This is helpful, but to focus this, when you say that this is not a union security agreement, are you saying that it's not within the exception provided by 11th? So Section 2 Eleventh isn't an exception. That's what it says in D. It's an exception from 4th and 5th. It depends on what you mean an exception to. Okay. So counsel said it was an exception to the anti-union or the freedom to organize, freedom to join or not join a union. You have to look at Section 2 Eleventh for what it is and what it was intended to do. The prior version of the statute, prior to 1951, forbade union security. Okay. But it also, did it not forbid the employer's deduction of wages for any fees payable to a labor organization? I think that's what, so in Clemens, for example, we suggest, and there's some question about, but in Clemens, we say that prior to 1951, agency fee agreements were also prohibited. And so I think your friend says, then we must look into 11th to see just what agency fee agreements are provided. They could not be required. It's not that you couldn't have them. They couldn't be required. Okay. And what is the status of Section 29 here? Is that not a requirement on Mr. Barron? No. So the question, and this is one of the points that I was going to make. And that's because he can't be terminated, but there can be lesser sanctions. What makes it not a requirement? So plaintiffs in their papers say repeatedly that the plaintiff was required to do this. He was required to pay an agency fee. He wasn't required to pay an agency fee. He had absolute free choice to join the union, pay dues, not join the union and pay an agency fee, or be a free rider, and there were consequences associated with that. But nobody made him pay agency fee because he didn't. How do you think these dual unionism cases play into the interpretation here? So the dual union cases are really the prime authority, and we have decisions from the 8th District Courts, and the 3rd, and the 2nd, and I got to say the Eastern District of Pennsylvania up to the lower court, but it is a really thorough discussion of all the preceding cases. But those cases stand for the proposition that Section 29 of the TWU Allegiant Agreement is not a union security clause, and that the parties have the ability to enter into an agreement that uses seniority as a lever of sorts to induce or incentivize employees to not be free riders, to pay an agency fee. But they make it clear that it doesn't require them to do anything. They have the choice to be a member, pay dues, whatever it may be, to one union. So the first, the 7th, and the 8th Circuit cases were post-certification cases where there was the requirement of the showing of anti-union animus for a Section 2 violation. Would we need to make that same kind of finding here? Can you rule in favor of the respondents without that context? Without the context of the post-certification? It being a post-certification where a required showing of anti-union animus is there to make a Section 2 violation claim. I think it is a basis upon which to rule for allegiance in TWU, but it is not a necessary element, because what we don't have in this case... So how would you apply that here? This is post-certification, is that correct? Correct. It's post-certification, and you would say what? There's no showing of anti-union animus, or what? In the normal post-certification context under TWU versus IFA, in order to have a viable claim under Section 2-4, there has to be some action which is fundamentally detrimental to the collective bargaining agreement or the collective bargaining process or that undermines the union. And that's not what we have here. And I mean, one of the things that's, to me, very ironic about this case is what we're talking about is a provision in the collective bargaining agreement that was negotiated by the parties, ratified by the membership. How do you have a Section 2-4 claim arising from an agreement that has been ratified by the parties? Now, you may be able to have a Section 2-4 claim under egregious circumstances, where the application of a provision in agreement shows some kind of invidious discrimination against a plaintiff. But we're not talking about any particular application of the agreement here. We're talking about the words in the collective bargaining agreement that they contend violate Section 2-4. And so your view is fourth's prohibition on deduction of fees from wages must be read as compulsory upon termination, deduction of? Your Honor, the first thing I would say is Section 2-4 prohibits coercion to join, not join, remain, or not remain member of a union. It doesn't say anything about paying an agency fee. And it says, why does that not say that just after? It says assist in the collection of agency fees. Section 2-4? Yes. I'm trying to get you to go past the comma that is the focus here. You can't make employees join the union, but you also, a carrier, cannot deduct from the wages of employees any fees payable to labor organizations or assist in them. Well, of course. There's the Section 2-11-B, I believe, that says you can have a dues checkoff. But only, but you're saying it's not, so I guess, is 29 covered by 11-B? That provision, yes.  So Section 2-11-A only addresses the genuine requirement to join the union. Then there's been a gloss put over it in Street to say that has to reach people who don't become members because there's constitutional question that you can't compel somebody, Freedom Association, to join the union. But what the cases of Street and Ellis, for example, tell us is that under Section 2-11, you can't compel somebody to join the union, but you can compel them, genuinely compel them to pay an agency fee. That's what Section 2-11-A reaches. What's at stake here? How would Allegiant Air or the union be disadvantaged by not having these lesser penalties? Why wouldn't you just have everyone get terminated if they don't pay their agency fees? So that goes back to the negotiation of the agreement and, frankly, the rationale that will show that when Allegiant and TW were negotiating the collective bargaining agreement, Allegiant was of the view that it didn't want its flight attendants to be required to join the union or pay an agency fee. It was strongly opposed to union security. And only at the very end of negotiations was there eventually an agreement reached to allow this provision to induce or discourage somebody from being a free rider. But Allegiant proposed that so that somebody like the grievant had the choice that he could decide, I don't want to join the union, I don't want to pay an agency fee. There may be consequences associated with that, but I have free will to decide whether I'm going to join the union, pay an agency fee, or be a free rider. It wasn't to discriminate against him, it was to benefit him. He had three choices rather than two. But one of the things I'm trying to get back to, the idea that Section 2-4 includes this prohibition against paying an agency fee, the whole notion of an agency fee didn't arise until the 60s, when Street was issued, where the court said, you know... In the case of radio officers, I do think that case is not favorable to your position. Why is the text of the NLRA not applicable here or informative here for the RLA? So the text of the NLRA has that particular provision that prohibits paying an agency fee, refers to discrimination with regard to any term or condition of employment, and there's no analog to that in the Railway Labor Act. And that kind of gets us to the point they made or tried to make about Addington. I don't think anybody would dispute that if TW and Allegiant put in their collective bar agreement a provision that says somebody who joins the union accrues... Wait, don't you think Eleventh has a non-discrimination provision that says that no such agreement shall require such condition of employment with respect to employees to whom membership is not available upon the same terms and conditions as are generally applicable to any other member, or with respect to employees whom membership was denied or terminated? I mean, that kind of has a flavor of a non-discrimination provision. It has that flavor, but the language in Section 211 and Section 8... 8-2, maybe? I'm much more familiar with the RLA, I will say. But Section 211 very much echoes particular language in the National Labor Relations Act, but that reference to the terms and conditions of employment isn't one of them. And I'm particularly focused on Section 2-4, because what I'm trying to get back to is they rely on this notion that Section 2-4 prohibits an agency fee. But Section 2-4 was enacted before the idea of an agency fee ever came up. That didn't come up until Street, where the Supreme Court said, we can't require employees who don't support the union to make the same contribution. And then Ellis kind of defined the line between what's germane to their collective bargaining obligations and what isn't. So it's really not until Street and Ellis that you really get the whole notion of an agency fee, which is obviously decades after Section 2-4 was passed. 2-4 could never have been implemented, ratified by Congress, signed by the President with some contemplation of an agency fee. You're 50 seconds over your time. Let me see if my colleagues have any other questions for you. No? Okay. Thank you. Good morning, Your Honors. Osana Randolph, and on behalf of the Transport Workers Union Local 577, the AFL-CIO, with the law firm of Phillips, Richard & Rind. I want to address Count 3 of the complaint and the argument that Mr. Baruman has made that this provision, Section 29 of the Collective Bargaining Agreement, violates the union's duty of fair representation. Of course, the union agrees that it's bound by a duty of fair representation not to act in a manner that's discriminatory, arbitrary, or in bad faith. But as the District Court found, and as is clear by the language of Section 29, that provision doesn't discriminate, as Mr. Baruman has alleged in his complaint, between members and non-members. It treats members and non-members precisely the same way. Many of the cases that he cited, I believe including Radio City, of course, there's a plenary of cases that say that a union cannot enter into a collective bargaining agreement that discriminates, frankly, on any term based on membership or non-membership, let alone seniority. But here, if a union member fails to pay their union dues, their privilege to bid based on seniority is suspended. And if a non-member fails to pay his or her agency fees, that person's bidding privileges by seniority is likewise suspended. They're treated exactly the same. I believe that the appellant cites cases like Addington for the proposition that you can't discriminate based on seniority. But it's not enough. It's not enough to show that a provision of the collective bargaining agreement differentiates between groups of employees. The basis of that distinction has to be something that is irrational or invidious. It cannot discriminate, for example, based on race, based on sex, or based in Addington specifically on political animus or political expediency. But there is no case that says that you cannot differentiate between some kind of benefit in the collective bargaining agreement based on being a non-payer of either union dues or agency fees. And in fact, you know, the fact that Section 11A, 211A of the RLA and in other federal statutes and courts recognize that a union has a legitimate interest, I believe, as was mentioned, in ensuring that individuals who gain a benefit from this collective bargaining process, as barmen certainly did here in the collective bargaining agreement's ability to bid by seniority and have other things by seniority, that that agency fee or fair share payment is something that is legitimate for the union to do. Thank you. All right. No questions? Then thank you very much. Thank you. The first thing I'd like to mention is that the Supreme Court recognized that it's termination that's required under Section 152, 11th, and not efforts to induce. Eliminating free riders was Congress's purpose. If you look at all of the congressional testimony, all of the cases cited, they all refer to eliminating free riders. Indeed, Street and Hansen said that the Let me ask you a question. What is your endgame here? So you want to say that they have to be terminated, and then you're going to bring a challenge under 2, 4th? No, because Isn't that compelling a union membership? No, Your Honor. What's the endgame here? I just want to Sure. The point is that if they cannot reach an agreement as a condition of continued employment, that means that their agreement is unlawful and unenforceable. It did harm barmen, contrary to the appellee's representation. Why does he want to be terminated? He quit, though, correct? He did ultimately leave, but he So he leaves For several years Can you wait just a minute? Sure. What does he get out of this? Some kind of retroactive recalculation of what his seniority would have been? Well, we have to The court below I'm just asking you, what would he get? The court below bifurcated the phase on damages I understand And so he lost lucrative flight assignments because, as this court said in Addington, seniority is a zero-sum game. And so he had new hires. For several years, he was at the and benefits, and he'd like to see the monetary value of that back. The dual unionism cases, by the way, are totally irrelevant. They've never been applied to a single union context. And that's important, because in the single union context, they're coercive. That sort of arrangement would be coercive. The dual union employees had options. They were basically paying for insurance in the event that they returned to their former units. Mr. Gillian, what do you say to your friend's argument that this is not coercive either, that your client has options, so it doesn't come within fourth at all? So it's coercive because they demanded, they exercised their collective economic power to demand that he pay, contribute money to the union, or lose your seniority. And they took away his seniority. So that's true of lots of conditions of employment on employees, is it not? But they can't require contributions to the union. That violates fourth. The only way they can do it, the only way that Congress authorized, is under Section 15211A, Union Security Agreement. And Section 15211D shows that. And so do all the Supreme Court cases and this court's case, Clemens. So you argue that the dual unionism cases shouldn't apply when you're suing both an employer and a union? That's correct. Because you think then the administrative decision-making body would be biased because it would include a representation of the employer and the union? Am I understanding your argument correctly? Well, Your Honor, you're referring specifically— Where is there any authority that supports that distinction? So Your Honor, you're referring specifically to the post-certification bar that's applied to major and minor disputes. This is neither. This is a statutory rights enforcement action. No, I'm referring to your argument in your briefs that say the dual unionism cases don't apply here because, unlike them, where it's a union suing a union, we are an employee that is suing both an employer and a union. And that that distinction matters. So my question is, why does that distinction matter? What authority tells me that that distinction matters? Well, I think that the distinction—so I don't think either the employer or the union could require Mr. Ballerman to pay agency fees without a Section 152 11th agreement. You know, the post-certification distinction arises because— No, I'm asking about the distinction that you made in your briefs, why it shouldn't apply here because you're suing two entities. Why is that relevant? I see. So this is a major-minor dispute that's not subject to arbitration from the employees. But I think that the fact that they were both acting together shows that this is economic coercion, which is prohibited—RLA prohibited coercion and influence, if you looked at the Supreme Court precedent on that, like the Texas NOR case we cited. So this is a pure statutory rights enforcement action. Just as Clemens recognized, there's no post-certification bar. Ballerman can exercise his rights under 11th and 4th, consistent with Clemens. So I don't think it really matters—to get back to your original question, I don't think that it really matters whether he was suing one or the other. I think the point that I was trying to make there, Your Honor, is just that it's a subpoint that you can't have a post-certification bar where both the employer and the union are antagonistic to his rights, are basically aligned on the other side of his rights. But this is a statutory rights enforcement case, so the post-certification bar doesn't apply, and that's recognized by almost 80 years of Supreme Court precedent in cases where no post-certification bar was enforced. And I should point out, too, that the district court didn't rule that it applied. So you're almost four minutes over your time. Let me see if my colleagues have any further questions for you. No? Okay. Thank you all, and thank you to everyone for your helpful arguments. Thank you very much.
judges: McKEOWN, KOH, JOHNSTONE